## Lehigh Aircraft Company v.
## Lehigh-Northampton Airport Authority

*John P. Thomas*, for plaintiff.

*John R. Hudders*, for defendant.

WIEAND, J., May 25, 1965.—This action in assumpsit was instituted to recover damages to an airplane while stored in a hangar owned by defendant. Because the complaint contained no averment of negligence, a demurrer was filed and is presently before us for disposition.

Whether defendant's demurrer is well taken or not depends upon whether the allegations of the complaint reveal the existence of a bailment. If there was a bailment and if it has been adequately pleaded, plaintiff may then rely upon the rule of law which establishes that when a bailee returns the bailed goods in a damaged condition or fails to return them at all, he must "give an account of the matter" or assume responsibility for the loss: Schell v. Miller North Broad Storage Company, Inc., 142 Pa. Superior Ct. 293. If, on the

other hand, the allegations of the complaint do not contain facts from which a bailment can be found to have existed, the burden of proving negligence which caused damage to the airplane is upon plaintiff, and a complaint which fails to allege such negligence is insufficient: Taylor v. Philadelphia Parking Authority, 398 Pa. 9.

A bailment has been defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be: Wright v. Sterling Land Company, Inc., 157 Pa. Superior Ct. 625, 627. Without delivery of possession by an alleged bailor to the alleged bailee, an essential element of a bailment is lacking: Bash v. Reading Cold Storage and Ice Company, 100 Pa. Superior Ct. 359; Wright v. Sterling Land Co., Inc., supra.

The complaint alleges that the damage to plaintiff's airplane occurred on May 31, 1963, while it was stored in defendant's hangar pursuant to a written agreement between the parties by which defendant "agreed to lease to the plaintiff space within which plaintiff could store airplanes owned by the plaintiff". A copy of the agreement has been attached to the complaint and must, because of the absence of averments of additional facts, form the basis for our determination of the relationship between the parties with respect to the damaged machine.

This agreement compels the conclusion that a bailment was neither created nor intended. Plaintiff was merely granted the right to maintain and operate a fixed based aircraft service at the Allentown-Bethlehem-Easton Airport and, in connection therewith, the right "to use and occupy exclusively" the terminal

building hangar, as well as various other spaces more particularly defined in the agreement. For these rights, the authority was to receive a stipulated percentage of the gross amount received from the conduct of plaintiff's business. Plaintiff decided which plane or planes should be stored in the hangar, as well as the number of planes to be so stored; the authority had no control of the identity or the number of planes which plaintiff might from time to time keep on the premises. Plaintiff assumed the duty to keep the hangar in a clean and sanitary condition and in a state of good repair and agreed to purchase public liability insurance "so as to fully cover any damage to life or property occasioned by the Licensee's operation upon said airport". In the event of plaintiff's breach of the terms of the agreement, it could be evicted and its goods, articles, wares and merchandise could be sold at public sale, after due notice to plaintiff, and the moneys realized in excess of amounts due defendant were to be returned to plaintiff. There were many additional provisions contained in the 23 paragraphs of this agreement, but it will serve no purpose to recite them here. Suffice it to say that, except as hereinafter set forth, they were provisions not infrequently found in leases of business properties.

Plaintiff directs our attention, however, to that portion of the agreement which is as follows:

"This agreement shall not be construed as creating the relationship of landlord and tenant, but rather that of Licensor and Licensee. The Licensee shall gain no rights of a tenant hereunder."

In our view, it does not aid plaintiff's position that the parties desired the agreement to be construed as a license rather than a lease. Whether the agreement be a license or a lease is of no moment, for in either event, it is clear that a bailment of stored airplanes was not intended.

Finally, plaintiff points to a paragraph in the agreement which provides:

"The hangars, offices and shops which the Licensee is privileged to use and occupy by the terms hereof, shall at all times be in the possession of the Licensor subject to the rights granted hereunder, and the Licensee shall do nothing to interfere with such possession of the Licensor".

Whatever purpose was intended to be served by this paragraph, it is clear that defendant's right of possession did not extend to the airplanes stored in the hangar and could not interfere with the use and occupancy of the described premises by plaintiff. Plaintiff placed airplanes in the hangar and removed them from time to time and at any time for use in its business. So long as plaintiff complied with the terms and provisions contained in the lease, defendant had no right whatsoever to interfere with or prevent plaintiff's exclusive possession of its airplanes or its right to store the same in the hangar.

In an action questioning the right of the authority to grant the license to plaintiff, this court had a prior opportunity to review the agreement between these parties in Douglass v. Lehigh-Northampton Airport Authority, et al., 28 Lehigh 146. Although not there concerned about the existence of a bailment, the court said, at pages 151 and 152:

". . . the Authority does not obligate itself in any way other than to permit the licensee to operate upon Airport property. All obligations and liabilities flow from the licensee to the Authority. There are no circumstances under which the Authority assumes any obligation or liability whatsoever to or on behalf of [the Lehigh Aircraft Company.]"

In our opinion, plaintiff acquired by this agreement the right to conduct a flying service business at the airport and the use and occupancy of such facilities

as were necessary and incidental thereto. As to the airplanes, the authority merely granted storage space without assuming, expressly or impliedly, any duty or responsibility with respect to the care or control of the property stored and is not, therefore, a bailee. Its relationship to these airplanes is no different than that which a lessor of a garage or service station bears to the automobiles stored on the premises by his tenant, the proprietor of the business.

Whether plaintiff can allege additional facts which would disclose the existence of a bailment despite the provisions of this written agreement or whether it can allege facts to sustain a cause of action based on negligence, we do not know. We believe, however, that an opportunity to file an amended complaint is necessary under these circumstances, and an order will be entered accordingly.

## ORDER

And now, May 25, 1965, defendant's preliminary objection in the nature of a demurrer is sustained and judgment shall be entered in favor of defendant unless plaintiff shall file an amended complaint within 20 days after service of a copy of this order upon its counsel.